SEUMALO I. ALIIMAU and UKULELE I. SEUMALO, for themselves, their sisters and brothers, and on behalf of their parents IKAPOTI and MARIA, Plaintiffs

v.

SALAMASINA M. SATELE, BILL SATELE, GALU SATELE, and PAUELI SATELE, Defendants

High Court of American Samoa
Land & Titles Division

LT No. 34-86

December 2, 1987

Before KRUSE, Associate Justice, VAIVAO, Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiffs, Aviata Fa'alevao
For Defendants, Charles Ala'ilima

This matter is a land dispute arising after attempts by plaintiffs, the Seumalo family, to register a portion of land named "Alailoto'o" or "Loto'o," situated in the village of Vailoatai, Western District. Defendants are individual members of a branch of the Satele family of Vailoatai who object to the registration attempts, upon the ground that the land in question is the communal property of the Satele family. While defendants acknowledge the use and occupation of the land (to the extent of some 5.54 acres more or less) by the Seumalo family, they emphatically reject the plaintiffs' claim to entitlement in their own right, and hence registration of the land as such.

Plaintiffs' testimony was to the effect that their father, one Ikapoti, deceased, had in the early 1930s constructed a church, some church-related structures, and a number of other Samoan buildings for Vailoatai, at the behest of the village council. In recognition of his services, the village had given to Ikapoti some ten acres of land while the then-Satele Mosooi appointed the talking chief title of "Seumalo" to Ikapoti and his heirs.

The present titleholder is Seumalo I. Ali'imau, the son of Ikapoti, and he has continued, with his siblings, the occupation and use of the claimed portion of land.

Defendants, on the other hand, contest the attempted registration by plaintiff with the following reasoning: that while the land in question was designated for the use and benefit of the plaintiffs by Satele Mosooi, the plaintiffs, like all others who occupy Satele communal lands,

104

do so only upon the traditional condition of rendering service (tautua) to the Sa'o of the family. Defendants argue that while they themselves, as Satele family members, are occupying family lands, there is reason neither in law nor in custom whereby they could separate out for themselves alone that communal property which they occupy, just as there is no reason in law or custom whereby the Seumalo faction could expect to hold Satele family lands independent of the Sa'o's title and the duty to render tautua corresponding with the use of family land.

In support of their position, defendants deny the existence of any land grant in return for services. Their version of the origins of Seumalo Ikapoti in Vailoatai is as follows: while acknowledging the latter to have built one Samoan structure for church purposes in the village, defendants have it that Ikapoti was fully repaid in the normal manner in accordance with custom. (That is, through the appropriate presentation of food, fine mats, money, and goods of traditional value.) While there was accord and satisfaction between the village and Ikapoti, defendants contend that the builder had decided to stay on in Vailoatai and pressed Satele Mosooi for a residential site. He is said to have petitioned Satele on at least three occasions for a piece of land and Satele finally acceded, making an assignment conditional on tautua.

To substantiate their position, defendants offered the following proofs. Poueli Satele testified of a prior attempt by Ikapoti and his wife, Malia, to seek Satele Solomona Faumuina's permission to survey the land. Ikapoti was met with the response of either rendering service to the Satele title or removing himself and his family from the land. Defendants are also of the position that the compact concerning the land involved Satele Mosooi and Ikapoti only. They deny any involvement of the village.

Defendants further presented what they claim as documented family history recorded by Satele Mosooi. This writing alludes to the understanding that the land "Loto'o" was given by Satele to Ikapoti subject to the traditional service requirement, rather than being an outright village grant. A recent separation agreement was also tendered to substantiate a recent affirmance of

105

"pule" by Satele Mosegi on lands claimed to be "Loto'o."

Defendants further pointed to five additional and contiguous acres, said to be a part of the same land "Loto'o," as having been registered in the name "Satele" in 1933. This was part of a joint Vailoatai/Taputimu village registration effort, preparatory to a long-term lease to the territorial government of what became known as the Feleti School and Taputimu farm.

In evaluating the competing claims of the parties, we find that the scope of the original grant to Seumalo was about the five and one-half acres that is the extent of their net claims today. Their understanding of a ten-acre grant is inconsistent with the fact that the adjacent portion of land had been registered in the Satele title since 1933 and occupied over the years by Satele's lessee, American Samoa Government. It is further inconsistent with the fact that the extent of their occupation and use has been confined to the five-plus acres now claimed, as was quite evident in their testimony.

With regard to this area now claimed by Seumalo, we find that the evidence preponderates in favor of plaintiffs' version. Firstly, the written family history submitted by defendants as having been prepared by Satele Mosooi suffers in fundamental respects. The documentation bears an illegible preparation date which could be read as either 1931 or 1951. If it is the case that the latter is the date of preparation, then of course Satele Mosooi could not have been the author, having died some time prior.

Defendants claimed, however, that the writing was in fact prepared in 1931. The real problem with this assertion is that Mosooi, as the alleged author in 1931, would have to be acclaimed among the biblical prophets, as the writings referred to specific events occurring at specific times after 1931. Rather, the writings appear more probable to the Court as having been prepared and recorded by the defendants' side of the Satele family, in accordance with their version of the occurrence, at a date well subsequent to the tenure of Satele Mosooi. The writings are not contemporary recordings and we give weight accordingly.

106

We are further persuaded by the testimony of the current Paramount Chief Satele Momosea, who did not join in defendants' objections. His understanding of the extent of the traditional family holdings was that it was limited to the inward side of the village. According to Chief Satele's testimony, family holdings in land did not reach the seaward side of the village, where the portion in dispute is located.

This testimony was corroborated by High Talking Chief Lopa speaking on behalf of the village. It was Lopa's understanding that the registration in the name of Satele of the mentioned five acres of the Taputimu farm lease was the result of an accommodation by the pertinent village landowners at the time, in deference to their ranking matai Satele, in order that the latter could share in lease revenue. Lopa is in agreement with Chief Satele's testimony that Satele land holdings did not traditionally extend to the seaward side of the village. Lopa further testified that the land now claimed by Seumalo was in fact the subject of a community grant by the same pertinent village landowners (who made the 1933 registration accommodation in favor of Satele), in recognition of Ikapoti's service to the village. While these relevant landowners appointed the land "Loto'o" to Ikapoti, Paramount Chief Satele Mosooi appointed the honors bestowed with the title "Seumalo."

Talking Chief Lopa acknowledged that as far as the land donors were concerned, the grant to Seumalo Ikapoti in recognition of his services to the church was outright, and not to be disturbed. The village council was, however, showing some concern that some individual members of the Satele family were attempting to act in derogation of the grant and, more importantly, of the rights of the grantors themselves.

Finally, two other factors affected credence in defendants' position. Satele Mosooi raised as a son one Ofe Satele Mosooi, now some seventy years of age. Ofe referred to Satele Mosooi as his father and testified from personal knowledge that his father was not literate, and therefore could not have authored the purported writings of 1931. Secondly, the recent Separation Agreement above referenced and executed by Satele Mosegi purported to have the lands there concerned as being named

107

"Mauga land (Loto'o)." A certified copy of the original Separation Agreement from the Territorial Registrar's office showed the land as named "Mauga land" only. The reference in parentheses to "Loto'o" as contained in defendants' exhibit is an additional writing to the instrument. The attempt, therefore, with an altered instrument, to demonstrate that portion of land as being a part of "Loto'o" for purposes of highlighting Satele's "pule" seriously affects our assessment of credibility.

Plaintiffs, to the contrary, demonstrate use and occupation of Loto'o quite independent of any duty to render service to the Satele. Seumalo's post-war claims to crop damage and land use by the United States Marines were filed by Seumalo "as matai and head of [the] family." We also find certain separation agreements over the land Loto'o executed by Seumalo as the matai of his family concerning the structures on the land erected by members of his family at various times. These separation agreements are subject to statutory posting requirements to permit third-party objections. No such objections have been noted before from the former Satele titleholders.

CONCLUSION

It is the conclusion of the Court based on the foregoing that the Satele family has no interest in the 5.54 acres being the land "Alailotoo'o" or "Loto'o," as more particularly described in Survey Pvt. No. 264-8-83 and claimed by the Seumalo family. Accordingly, the objections made by defendants herein are held to be without merit, and may therefore be disregarded by the Territorial Registrar.

Absent other third-party objections timely made, the Registrar is directed to register the said land "Alailoto'o" or "Loto'o" as the communal family land of the Seumalo family of the village of Vailoatai, in accordance with the statute made and provided for in these cases. See A.S.C.A. § 37.0103(c).

It is so ORDERED.